Mark Mausert
NV Bar No. 2398
729 Evans Avenue
Reno, NV 89512
(775) 786-5477
Fax  (775) 786-9658
mark@markmausertlaw.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| PAULA FLOWE, | Case No.: |
| Plaintiff, | |
| vs. | **COMPLAINT AND JURY DEMAND** |
| WASHOE COUNTY SCHOOL DISTRICT, | |
| Defendant. | |
| _____/ | |

COMES NOW plaintiff, through counsel, and hereby complains of defendant as follows:

<u>Jurisdiction, Venue & Jury Demand</u>

1. Plaintiff is a woman of African-American descent, who is a resident of northern Nevada and who commenced working for defendant on or about September 10, 2019, and who was wrongfully terminated from the employ of the Washoe County School District (hereinafter "District) on or about June 5, 2020.  At the time plaintiff commenced working for defendant she possessed approximately 35 years of teaching experience.   Plaintiff has a Masters Degree in Special Education (K-12) and Elementary Education (K-6); has been recognized as a Distinguished Teacher at San Jose City College by the Chairman of the Department; and had worked as a Teacher Mentor in New York and California in high schools.  Plaintiff had a successful teaching career, spanning more than three decades before she commenced work with

1  defendant.  Plaintiff had never encountered the sort of teaching environment she encountered in
2  Washoe County, e.g., a teaching environment replete with disrespect in which students are
3  allowed to listen to rap music while they are supposed to be learning.  All, or almost all, acts,
4  statements and omissions herein alleged occurred in northern Nevada, where at plaintiff was
5  previously employed by defendant.   Plaintiff has obtained a Notice of Right to Sue from the
6  Equal Employment Opportunity Commission.   This Notice is attached hereto and incorporated
7  in this Complaint and Jury Demand. This Complaint and Jury Demand is timely filed in accord
8  therewith.   Plaintiff hereby requests a jury trial relative to all issues so triable.

        2. Defendant District  is one of the school districts which exist in the 17 counties of the State of Nevada.  That is, defendant District is a governmental entity, recognized under the laws of the State of Nevada.  At all times herein mentioned defendant had at least fifteen full-time employees working at least twenty weeks per year.

        3.  This Court has subject matter jurisdiction over this case per 28 U.S.C. 1343.  The Court has subject matter jurisdiction because plaintiff is a woman of African-American descent who is alleging she was subject to discrimination and a hostile work environment because of race, and a hostile work environment because of her gender, in violation of 42 U.S.C. 2000e, et seq.

        4.  This Court has venue re this action pursuant to 42 U.S.C. 2000e-5(f)(3) because all, or almost all of the actions, statements and omissions which form the basis for this lawsuit occurred in northern Nevada, i.e., in the geographical area of this judicial District.  Further, plaintiff would have continued to work in this District for defendant but for the discrimination which she suffered.

First Cause of Action

(Racial Discrimination)

        5.  Plaintiff hereby incorporates the allegations of paragraphs 1 through 4, inclusive, as well as all other paragraphs herein, as though the same had been fully stated.

        6.   Plaintiff was employed by defendant.  Throughout much of her employment plaintiff was subject to harassment based on her race, i.e., based on the fact plaintiff is of

African-American descent. On a daily basis plaintiff was subjected to "rap" or "hiphop" music which defendant permitted students to play. Plaintiff is in her sixties and has been a school teacher for more than three decades. Defendant hired plaintiff in her capacity as a teacher. Defendant permitted and/or failed to remedy the practice of students listening to rap or hiphop music on the school premises, a practice which has gone on for years, well before plaintiff was hired. That is, defendant permitted students to wear electronic headset which play music and permitted students wearing those headset to listen to rap or hiphop music, replete with offensive racial and sexual terms and language, as well as offensive discussions of race and/or sex. By allowing students to listen to rap music, and repeat foul lyrics in the presence of other students, defendant permitted a teaching/work environment to exist which was not conducive to learning. For instance, this practice eroded the respect, and therefore the requisite control, which teachers have to customarily enjoy and exert in order to effectively perform their jobs. Plaintiff, who had never worked in such an environment, had not been forewarned by defendant she would be subject to daily harassment, based on race and sex. Any difficulties or deficiencies in plaintiff's work performance which occurred were the proximate result of a deficient and disorderly teaching environment which defendant permitted to exist. Defendant is therefore estopped from relying on any such alleged difficulties and/or deficiencies as a basis for an adverse employment action re plaintiff. That is, while the out-of-control teaching work environment, replete with rap music, adversely affected plaintiff, as otherwise alleged herein, it also exerted its own effects upon the students, independent of any action which plaintiff took or did not take. The teaching/work environment was not conducive to teaching, as well as learning, and defendant knew this to be so before it hired plaintiff. On a daily basis, plaintiff was compelled to hear foul racial and sexual terms and discussions thereof. A reasonable African-American woman, similarly situated could easily have been offended by the racial and sexual content of the music. Plaintiff was offended, based on both race and sex and experienced her work environment to be permeated with racial and sexual hostility to the point at which the work environment was racially hostile and therefore actionable per Title VII and sexually hostile, and therefore actionable per Title VII.

7. Any diminution or deficiency in plaintiff's work performance was directly and proximately caused by the racial and sexual hostility described herein. Likewise any difficulties which students may have allegedly experience re learning were proximately caused by the improper work environment which defendant has permitted to exist for years. Defendant is therefore estopped from relying upon any allegations of deficient work performance, failures by students to learn, and/or any actual deficiency, as a legitimate basis for terminating plaintiff's employment and/or taking any other adverse employment actions against plaintiff. The termination of plaintiff's employment, and other adverse employment actions described herein, constituted a ratification of the racial harassment and sexual harassment plaintiff was subjected to.

8. On or about September 10, 2019, plaintiff transferred from Roger Corbett Elementary School to Damonte Ranch High School. Plaintiff was immediately placed into a work environment replete with racial and sexual hostility. Defendant allowed students at Damonte Ranch High School (hereinafter "Damonte") to routinely listen to rap or hiphop music, i.e., students were allowed to wear electronic headsets which they used to stream such music. On numerous occasions plaintiff was able to hear offensive racial and sexual lyrics being played, i.e., students would play the music at a sufficient decibel level so that plaintiff could hear the words of songs – even though students were wearing headsets. On a regular basis plaintiff heard racial and sexual epithets, e.g., "ni__a", or "ni__er" and "b___h", as well as other epithets which were offensive based on race and/or sex. Further, students would often repeat phrases or pejorative works which were present rap songs.

9. Plaintiff complained on a number of occasions to the District's management officials of the racial and sexual hostility which resulted in being compelled to listen to rap music, and the associated student remarks. One of plaintiff's complaints elicited a very hostile response, i.e., plaintiff pointed out that it would be inappropriate for any of defendant's personnel to use racially pejorative terms, akin to the "n" word, re other racial minorities. The reaction manifested by defendant was infused with anger and was intimidating. Defendant, in a verbally forceful manner, shut down plaintiff's complaint, while refusing to investigate and/or mitigate.

1  Defendant knew, and should have known, prior to fielding plaintiff's complaints, that many of
2  its students were listening to rap or hiphop music during school hours, on school premises and
3  knew, and should have known of the racially offensive and sexual offensive content of that
4  music – as well as of the offensive racial and sexual remarks which the students made in
5  conjunction with listening to rap music – which included, but was not limited to, repeating
6  some of the pejorative language.  Defendant District failed to properly investigate plaintiff's
7  complaints and the District failed to implement any prompt, adequate remedial action to cure
8  the racial and sexual hostility to which plaintiff was exposed on a daily basis.  To the contrary,
9  on several occasions plaintiff informed by defendant's management personnel that students
10  needed their music to calm and/or comfort them – and otherwise keep them quiet.  Plaintiff was
11  told by defendant the students could listen to whatever music they liked, as well as statements
12  to the effect the music calms the students.  Some of defendant's personnel justified the music
13  by noting they liked the music and listened to it themselves.  Plaintiff was told by at least one
14  member of defendant's management personnel to "pick your battles", i.e., to cease opposing
15  the racial and sexual hostility which defendant permitted.   In fact, defendant's administrators
16  "needed" the music in the sense that so long as students are occupied listening to music, they
17  don't tend to cause disruptions.  Accordingly, it appears defendants have made a conscious
18  choice to abdicate their duty to properly teach students, in favor of a form of electronic
19  babysitting, i.e., allowing students to occupy and distract themselves with rap music.
20         10.  At no time did defendant adequately address the problem posed by the fact that
21  plaintiff could often hear the music emanating from headset;; and/or that by allowing students
22  to listen to such offensive music defendant sent an implicit invitation/message to students, i.e.,
23  it was permissible to use racially offensive and sexually offensive terms openly at school.
24  Many of plaintiff's students accepted this invitation and did, in fact, openly use such
25  terminology in plaintiff's presence – and thereby offended plaintiff.  That is, defendant ratified
26  the daily presence of racially offensive and sexually offensive music in plaintiff's work
27  environment, and also the frequent racially offensive and sexually offensive language by
28  students, e.g., regular use of the terms "n___a" and "n____r", "hoes", "b___h", etc.

11. Defendant compounded the racial and sexual hostility plaintiff was subject to by frequently moving plaintiff from one position to another, along with changing plaintiff's duties. Defendant failed to provide plaintiff with the customary support, e.g., by allowing plaintiff to settle into regular duties at a fixed work station. Defendant failed to provide plaintiff with timely, constructive criticism. Defendant prematurely evaluated plaintiff. And, as stated, in the stead thereof, plaintiff was subject to a work environment permeated with racial and sexual hostility on a daily basis, which included trivializing plaintiff's complaints by noting some of defendant's personnel liked the music at issue. Defendant failed to properly evaluate plaintiff – so that plaintiff would be on notice of any alleged deficiencies.

12. On or about February 14, 2020, Vice Principal Taylor and plaintiff participated in a pre-observation meeting. At this meeting plaintiff reiterated her complaint (originally communicated to defendant in October, 2019, about being subjected on a daily basis to racially and sexually offensive music and statements). Vice Principal Taylor reacted to plaintiff's complaint in a very negative manner and manifested anger in doing so. On or about February 20, 2020, plaintiff had a Teacher Observation Meeting with Vice Principal Taylor.

13. On or about February 26, 2020, defendant provided plaintiff with her second negative evaluation (the first having been provided, in violation of District policy, only sixteen days after plaintiff commenced employment). After being told by the Chairwoman of the Special Education Department, Department Leader Shelley Schye, that the offensive rap music calms the students and plaintiff should therefore allow students to listen to rap music, Vice Principal Taylor criticized plaintiff in her second evaluation for allowing students to wear headsets in her class. Plaintiff was not allowed an adequate opportunity to rebut defendant's observations/conclusions which formed the basis for the negative evaluation. Nor did defendant adequately consider the adverse effects rap music had upon the students' ability to learn and/or on plaintiff's ability to function effectively as a teacher. Two consecutive evaluations are cause for termination/non-renewal of annual contract.

14. The February 26 negative evaluation and the termination of plaintiff's employment constituted acts of racial discrimination and retaliation as prohibited by 42 U.S.C. 2000e, et seq.

of the United States Code. Plaintiff was treated in a disparate and adverse manner relative to Caucasian employees. For instance, Caucasian employees were not moved from one work station to another on short notice. Caucasian employees were provided adequate support and constructive criticism, as well as evaluations, i.e., timely notice of alleged deficiencies. And, Caucasian employees were afforded due consideration if their ability to do their jobs was interfered with. A Caucasian employee, similarly situated to plaintiff, would not have had her employment terminated. The termination of plaintiff's employment was the direct and proximate result of racial animus/discrimination.

15. As a direct and proximate result of being subject to racial discrimination, plaintiff suffered loss of wages and benefits, emotional distress, loss of enjoyment of life, fear, loss of sleep and anxiety, and various physical symptoms. It has been necessary for plaintiff to incur costs and retain an attorney to attempt to vindicate her federally protected right to a workplace free of racial discrimination.

Second Cause of Action
(Racially Hostile Work Environment)

16. Plaintiff hereby incorporates the allegations of paragraphs 1 through 15, inclusive, as though the same were fully stated herein, as well as the allegations of all other paragraphs herein.

17. Throughout the latter part of plaintiff's employment, i.e., the period during which plaintiff worked at Damonte, plaintiff was subject to a racially hostile work environment, i.e., a work environment permeated with racial hostility and one which a reasonable African-American woman, similarly situated to plaintiff, would have found to be permeated with racial hostility to the point at which the terms and conditions of the work environment were materially and adversely altered.

18. Plaintiff did subjectively experience her work environment at Damonte in this manner, i.e, as being permeated with racial hostility to the point at which the terms and conditions of her work environment were materially and adversely altered.

19. As a direct and proximate result, plaintiff was injured and harmed as described

herein.

## Third Cause of Action

(Sexually Hostile Work Environment)

20. Plaintiff herein reiterates and incorporates the allegations of paragraphs 1 through 19, as well as all other paragraphs herein, as though the same were fully stated herein.

21. A reasonable woman, similarly situated, would have experienced plaintiff's work environment as permeated with sexual hostility to the point at which the terms and conditions of employment were materially and adversely altered "because of sex". That is any reasonable woman who was exposed to misogynistic and sexually graphic music as frequently as plaintiff was, along with students singing along with such music, and in conjunction with related statements by students could easily have perceived the work environment to have been permeated with sexual hostility.

22. Plaintiff did so perceive and experience her work environment at Damonte.

23. As a direct and proximate result, plaintiff was injured and harmed as described herein.

## Fourth Cause of Action

(Retaliation)

24. Plaintiff hereby incorporates and re-alleges the allegations of paragraphs 1 through 23, inclusive, as though the same were fully stated herein.

25. Plaintiff repeatedly complained of racial hostility and sexual hostility. Plaintiff complained on or about November 4, 2019 to Principal David Bell; on November 12, 2019, plaintiff complained to Vice Principal Freeman Holbrook, who was empathetic to plaintiff's complaints. He referred plaintiff to Mr. Taylor, stating, "Mr. Taylor handles those types of issues"; on or about February 4, 2020, plaintiff complained to Vice Principal Bell again; and on February 14, 2020, plaintiff complained to Mr. Taylor.

26. Defendant failed to conduct a prompt, thorough and fair investigation despite knowing plaintiff's complaints were meritorious, i.e., were based on fact and plaintiff's personal experience with the work environment defendant maintained. Defendant knew plaintiff's

complaints were meritorious because the conduct of which she complained had been occurring in an open manner, with frequent regularity, for years. That is, students openly wore headsets and played rap music loudly; and often used racist and sexist terms, similar to or identical to those used in the rap genre. Defendant made a conscious and calculated decision, to the effect that it is easier to placate students, e.g., to calm them and prevent them from causing problems, by allowing them to listen to rap music during the school day, on defendant's premises, than to prevent students from listening to such music. Alternatively, defendant reacted to plaintiff's complaints in violation of its own policies; in violation of Title VII; without conducting a timely, adequate and fair investigation – so as to resolve plaintiff's complaints by terminating her employment. The second evaluation, authored by defendant and provided to plaintiff on or about February 26, 2020, constituted an act of retaliation, as did the termination of plaintiff's employment. The termination of plaintiff's employment was, in material part, based upon the second evaluation. Defendant retaliated against plaintiff via the second evaluation, and then via termination. The termination was integrally based upon, and related to the evaluations, and in particular to the second evaluation.. It was a "but-for" cause, i.e., if plaintiff had received a favorable evaluation on or about February 26, 2020, she would not have been terminated.

27. Defendant interfered with plaintiff's ability to perform her work-related tasks by prematurely evaluating plaintiff; frequently moving plaintiff; denying plaintiff support; failing to constructively criticize plaintiff; and by permitting racial and sexual hostility to permeate plaintiff's work environment. Defendant is therefore estopped from relying on any alleged deficiency or diminution in plaintiff's work performance as a basis for plaintiff's termination.

28. As a direct and proximate result of being retaliated against plaintiff sustained economic damages and was otherwise harmed as described herein.

WHEREFORE, plaintiff requests the following relief:

1. For an award of compensatory damages re racial discrimination;

2. For an award of compensatory damages re racial harassment, i.e., being subject to a racially hostile work environment;

3. For an award of compensatory damages re sexual harassment;

4. For an award of special or actual economic damages, according to proof;

5. For an award of compensatory damages re unjust treatment leading to unnecessary and consequential outcomes on plaintiffs part;

6. For an award of costs and a reasonable attorney's fee; and

7. For injunctive relief to compel defendant to adopt and actually enforce reasonable policies against racial discrimination, racial harassment and sexual harassment, and for whatever other relief the Court or jury may deem just.

DATED this 19th day of October, 2021.

    /s/ Mark Mausert
Mark Mausert
NV Bar No. 2398
729 Evans Avenue
Reno, NV 89512
TELEPHONE:(775) 786-5477
FACSIMILE: (775) 786-9658
*Attorneys for Plaintiff*

## **INDEX OF EXHIBITS**

July 23, 2021 DOJ Issued Notice of Right to Sue. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   Exhibit 1